**SANFORD HEISLER, LLP**
1666 Connecticut Avenue, Suite 300
Washington, D.C. 20009
(202) 499-5202
Fax: (202) 499-5199
Email: kkimpel@sanfordheisler.com
**www.sanfordheisler.com**

555 Montgomery Street
Suite 1206
San Francisco, CA 94111
Fax: (415) 795-2021

1350 Avenue of the Americas
31st Floor
New York, NY 10019
Fax: (646) 402-5651

**VIA ECF**
**Honorable James B. Clark, III**
United States Magistrate Judge
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building, U.S. Courthouse PO 01
50 Walnut Street, Newark, NJ 07101

      Re:    *Barghout, et al. v. Bayer HealthCare Pharmaceuticals, et al.*
              **Civil Action No: 2:11-cv-01576-DMC-JAD**

Dear Judge Clark:

I write on behalf of Plaintiffs in the above-captioned matter. On Friday, January 31, 2014, the Parties appeared before Your Honor at a telephonic status conference. As discussed at that conference and described in the Parties' joint letter to the Court of January 17, 2014, despite extensive meet-and-confer efforts, the Parties have reached an impasse with respect to four categories of discovery sought by Plaintiffs: (1) Personnel Records for Individuals Reporting to Plaintiffs' Direct Supervisors; (2) Position Evaluation Correspondence; (3) Defendants' Responses to Plaintiffs' Third Set of Interrogatories to the Corporate Defendants; and (4) Internal EEO studies. Your Honor granted Plaintiffs leave to submit a motion by letter to the Court (Dkt. 93), and Plaintiffs now respectfully submit this motion to compel responses to these requests.

Plaintiffs' letter brief follows.

                                                   Respectfully submitted,

                                                   Katherine M. Kimpel

Judge Clark
February 7, 2014
Page 1

## I. Procedural History

Plaintiffs filed a class and collective action against Defendants Bayer Corporation and its relevant subparts (Bayer Healthcare, LLC, Bayer Healthcare Pharmaceuticals, Bayer Healthcare Consumer Care and Bayer Healthcare Animal Health) and twelve individual Defendants on March 21, 2011.[1]  The Complaint alleges that Defendants have engaged in "systematic, company-wide discriminatory treatment" of female employees on the basis of gender, the taking of federally- and state-protected leave, and their status as pregnant women or primary-caregiving mothers under both disparate treatment and disparate impact theories of discrimination.  Dkt. 48 at ¶¶ 2, 23-24, 669.  This systematic pattern and practice of gender discrimination stems largely from deficiencies in the Company's assignment, development, promotion, advancement, training, compensation and evaluation policies, practices and procedures.  *Id.* at ¶¶ 668-73.

The Court entered an Amended Pretrial Scheduling Order on June 14, 2012, which calls for bifurcated pre-certification and merits discovery.  Dkt. 53 at 1.  The matters specifically contemplated by the Parties and ordered by the Court as part of pre-certification discovery are:

> (a) Defendants' employment and human resources policies, practices and procedures **and how those policies are implemented and applied**; (b) **class-wide and comparator employment data and information**, such as job categories, job titles, job levels, job histories, and assignment, development, evaluation, promotion and compensation information; (c) facts relating to Bayer's organizational structure, such as lines of reporting, **designation of VS and other levels**, the allocation of decision-making authority and any oversight structures that may be in place and the application of the same; and (d) **full discovery as to the merits and damages of named Plaintiffs' individual claims.**

*Id.* at 1-2 (emphasis added).

## II. Personnel and Position Evaluation Information for Individuals Supervised by Plaintiffs' Direct Managers[2]

Plaintiffs are entitled to discovery relating to individuals supervised by the same managers as the Plaintiffs, including (1) personnel files and performance evaluations of these employees and (2) correspondence relating to evaluations of the positions held by these employees.  These documents are relevant and proper for production in pre-certification discovery because they shed light on the merits of Plaintiffs' individual claims and on the implementation of the practices, policies and procedures challenged on a class-wide basis.

---

[1] Plaintiffs filed an Amended Complaint on May 31, 2011, a Second Amended Complaint ("SAC") on July 8, 2011 (Dkt. 21), and a Third Amended Complaint ("TAC") on April 27, 2012 (Dkt. 48).

[2] In the Parties' January 17, 2014 Letter to the Court, these matters were addressed separately as points (3) and (4). Because the bases for Plaintiffs' Motion to Compel on these issues are intertwined, Plaintiffs address them together. The scope of these disputes remains unchanged with the exception that the Parties appear to have come to a resolution as to the concerns addressed in the second paragraph of point (3), relating to the method for identifying individuals selected for positions sought by the Plaintiffs.

Judge Clark
February 7, 2014
Page 2

Plaintiffs sought these documents on July 12, 2013 in Request No. 4 of their Fourth Set of Requests for Production to the Corporate Defendants ("Request No. 4") (Ex. A). Defendants refuse to produce these documents, stating they are "not relevant to Plaintiffs' claims." Jan. 17, 2014 Joint Ltr. to the Court at 3.

### A. Legal Standard

Parties may obtain discovery into "any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information is properly sought if it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The scope of discovery is particularly broad in employment discrimination cases. *See, e.g.*, *Harris v. Pub. Serv. Elec. & Gas Co.*, No. 05-2003, 2007 U.S. Dist. LEXIS 5412, at *6-7 (D.N.J. 2007) (noting that "courts have been cautioned not to impose unnecessary limitations on discovery" in Title VII cases, and "the discovery parameters . . . must be broader than the specific, individualized facts upon which a plaintiff's claims are based") (internal quotations omitted); *Miles v. Boeing Co.*, 154 F.R.D. 117, 119 (E.D. Pa. 1994) ("[T]he imposition of unnecessary limitations on discovery is especially to be avoided in Title VII cases, because of the nature of the proofs required to demonstrate unlawful discrimination may often be indirect or circumstantial.") (internal quotations omitted).

### B. Bayer Should Be Compelled to Produce the Personnel Files and Performance Evaluations of Individuals Supervised by Plaintiffs' Direct Managers

This case asserts individual and class-wide discrimination claims relating to initial assignment, pay, promotion, and performance evaluation. The evaluations and personnel files of individuals supervised by Plaintiffs' managers will reflect how Plaintiffs (and other women) are treated in comparison to their direct peers. Personnel files illustrate Plaintiffs' co-workers' qualifications, performance and treatment, including their employment applications, disciplinary action letters, education certificates, achievement awards, letters of recognition and resumes. *See* 2.3 Employee Personnel Files, BBP002487 (Ex. B). Performance evaluations will reflect the standards and approach managers actually took in assessing their subordinates, which will allow Plaintiffs to assess whether these performance reviews and other personnel actions were conducted in a fair and consistent manner.

Courts typically allow plaintiffs in discrimination cases to discover documents reflecting the treatment of similarly-situated employees, including those who report to the same supervisor, in order to assess whether there is evidence of discrimination. *See, e.g.*, *Salamone v. Carter's Retail, Inc.,* No. 09-5856, 2011 U.S. Dist. LEXIS 8425, at *31-35 (D.N.J. Jan. 28, 2011) (reporting to same supervisor is a consideration in identifying similarly-situated employees), *aff'd* 2011 U.S. Dist. LEXIS 41357; *Abrego v. Waste Mgmt. of Tex.*, No 3-11-CV-2443-D, 2012 U.S. Dist. LEXIS 88654, at *2 (compelling production of personnel files of employees who reported to plaintiff's supervisor because "trial Courts consistently allow discovery of personnel files in light of the importance of establishing pretext in discrimination cases") (internal quotations omitted). Further, these documents will pertain to male *and female* employees, which is relevant to Plaintiffs' allegations that Defendants engage in a pattern or practice of discrimination against women. *See, e.g.*, *EEOC v. Princeton Healthcare Sys.*, No. 10-4126, 2011 U.S. Dist. LEXIS 58056, at *51 (D.N.J. May 31, 2011) (granting discovery of extensive

Judge Clark
February 7, 2014
Page 3

personnel records because "[g]iven production of this discovery, Plaintiff's case may or may not be bolstered by Defendant's employment practices, policies and patterns").[3]

Moreover, the documents sought are patently relevant to Plaintiffs' class allegations of disparate treatment and impact premised upon Defendants' "assignment, development, promotion, advancement, training, compensation, and performance evaluation policies, practices and procedures." Dkt. 48 at ¶ 670. This Court already held in a February 11, 2013 Order that Plaintiffs are entitled to "company-wide discovery on the issue of the existence, application and implementation of the policies Plaintiffs allege result in discriminatory decisions." Dkt. 70 at 13 (ordering company-wide production of formal complaints of gender discrimination). Judge Dickson acknowledged that such discovery was required by the Supreme Court's decision in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011), because the "rigorous analysis" at class certification necessitates exploring some merits-like analysis, including the "question of whether the implementation of policies has resulted in discrimination." *Id.* at 12.

Finally, Plaintiffs' request is narrowly tailored to illuminate implementation of the policies at issue in this case and is not unduly burdensome—reaching a limited set of documents for *only* those individuals who also reported to the Plaintiffs' direct supervisors. Defendants' burden in complying with the request at issue should be minimal.[4] Therefore, the Court should compel Defendants to produce the personnel files and performance evaluations of all employees who reported to the named Plaintiffs' direct supervisors.

### C. Bayer Should Be Compelled to Produce Correspondence Relating to Position Evaluations

Bayer employs only one individual to conduct position evaluations in the United States: Douglas Garms. Plaintiffs explicitly sought any requests for or results of *any* evaluations of jobs (including those supervised by Plaintiffs' direct managers) in Request No. 8 of Plaintiffs' Fourth Set of RFPs to the Corporate Defendants ("Request No. 8") (Ex. A) on July 12, 2013.[5] Defendants now refuse[6] to produce correspondence to or from Mr. Garms related to "other

---

[3] Any concern Defendants may raise about employees' privacy interests is addressed explicitly by the mutually agreed-upon Stipulation and Discovery Confidentiality Order that governs this case. Dkt. 56 at ¶ 5.

[4] Should Defendants seek cost shifting, they must meet a high burden. Cost shifting is allowed only pursuant to an intensive inquiry of factors such as tailoring of the request and the importance of the issues at stake. Cost-shifting is discouraged in discrimination cases, where it has the potential to cripple discovery and undermine the "strong public policy favoring resolving disputes on their merits, and may ultimately deter the filing of potentially meritorious claims." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("*Zubulake I*").

[5] Request No. 8 states: "For each position held by any Plaintiff and for each position identified in response to Interrogatory No. 3 of Plaintiffs' Second Set of Interrogatories of Bayer, provide **all documents** reflecting any requests for Hay position evaluations and the results of any such evaluation, and the results of **any other Hay position evaluations conducted for any reason**." (Emphasis added.) These documents are also responsive to Request No. 28 of Plaintiffs' First Set of Requests for Production to the Corporate Defendants (Ex. C), issued on June 6, 2012.

[6] As described in the Parties' Joint Letter of January 17, 2014, Defendants have agreed to conduct a search of Mr. Garms' email for correspondence related to positions held or sought by Plaintiffs. Although the Parties were in dispute regarding the method by which such positions would be identified, it appears that they have reached agreement. Because Defendants have already committed to searching Mr. Garms' email, Plaintiffs do not expect

Judge Clark
February 7, 2014
Page 4

positions supervised by Plaintiffs' direct managers," asserting it "is not relevant and [is] beyond the scope of pre-certification fact discovery." Jan. 17, 2014 Joint Ltr. to the Court at 3.

The documents Plaintiffs seek bear directly on their class and individual claims challenging Bayer's job evaluation and Hay grade system. Mr. Garms' evaluations dictate to which "VS level" or "Hay grade" each position at Bayer is assigned. These levels or grades are the pay bands for all potential class members in this action. Michael Irons Dep. (Ex. D) at 51:3-12. Bayer's 30(b)(6) deponent on the job evaluation system testified that evaluations occur through a "feedback loop" involving the supervisor, HR, and Mr. Garms, underscoring the relevance of communications related to the evaluation process. *Id.* at 74:1-14. Production of final position scores or descriptions alone is insufficient. The Court's February 11, 2013 Order, the Amended Scheduling Order, and precedent within this jurisdiction all require production of these documents as evidence of the implementation of the practices, policies and procedures at issue in this case.

Further, Plaintiffs' individual allegations include claims that their VS levels were manipulated or determined improperly, resulting in lower positions and pay. *See*, *e.g.*, TAC ¶¶ 197, 452-54, 564, 574, 583, 587, 589-91, 608. Documents reflecting when and how Plaintiffs' positions were described and evaluated as compared to others within their supervisory group may tend to prove or disprove these allegations. Such information is also relevant to Plaintiffs' allegations that women are subjected to a pattern of discrimination at Bayer.

Accordingly, the Court should compel Defendants to devise, with Plaintiffs' input, search terms designed to gather communications reflecting requests for and results of evaluations of jobs held and sought by the Plaintiffs, as well as jobs supervised by Plaintiffs' direct managers.

### III.  Responses to Plaintiffs' Third Set of Interrogatories to the Corporate Defendants

Plaintiffs seek further responses to interrogatories regarding Defendants' litigation hold efforts in this action and its practices regarding document preservation and the retention of electronically stored information ("ESI"). With respect to Defendants' litigation hold efforts, Plaintiffs seek an order compelling Defendants to identify: (1) individuals to whom any litigation hold instructions were sent in this case; (2) what steps were taken to preserve ESI in this case; (3) what steps were taken to monitor compliance with preservation instructions in this case; and (4) what steps were taken to collect preserved ESI for potential production in this case. With respect to Bayer's ESI practices, Plaintiffs seek an order compelling Defendants to provide (5) the identities of Bayer employees and third parties involved with designing and/or implementing any legal hold in this case and (6) the identities of Bayer employees and third parties responsible for creating, maintaining and/or modifying Bayer's ESI retention policies and practices.[7]

---

them to assert that running additional terms will cause an undue burden or require cost-shifting. As stated above, Defendants face a high burden to justify cost shifting pursuant to *Zubulake I*.

[7] Plaintiffs believe that the limited information sought here would most efficiently be provided via verified interrogatory responses. In the alternative, Plaintiffs seek a Rule 30(b)(6) designee on these topics.

Judge Clark
February 7, 2014
Page 5

### A. Plaintiffs' Discovery Requests and Meet and Confer Efforts

On July 31, 2012, Plaintiffs sought a Rule 30(b)(6) designee to testify on litigation hold efforts and ESI practices. Despite Plaintiffs' amendment of their Notice and the Parties' substantial meet-and-confer efforts, Defendants refused to provide designees on these topics. Instead, the Parties agreed that Defendants would provide verified responses to interrogatories on these topics and that Plaintiffs would reserve the right to seek Rule 30(b)(6) testimony in the event Defendants' responses proved insufficient. *See* Aug. 14, 2013 K. Lamm Ltr. to Defense Counsel (Ex. E); Aug. 21, 2013 S. Bouchard Ltr. to K. Lamm (Ex. F). Plaintiffs served their Third Set of Interrogatories to the Corporate Defendants (Ex. G) on July 26, 2013, and the Parties then conferred extensively regarding the sufficiency of Defendants' responses to these Interrogatories. Ultimately, Plaintiffs agreed to limit the scope of their requests significantly, *see* Nov. 18, 2013 J. Sanford Ltr. to J. Lee (Ex. H), and the only items outstanding are those items detailed in the prior paragraph. Nevertheless, Defendants have refused to provide responses to the inquiries described above.

### B. Bayer Should Be Compelled to Produce Basic Information Regarding What Steps It Took to Preserve and Collect Evidence and Who Was Involved in those Processes

Plaintiffs seek basic information about what steps Bayer took to preserve and collect information and who was involved in those processes. This information is discoverable and necessary to allow Plaintiffs to assess whether Bayer implemented proper preservation practices in this matter, as it was required to do immediately upon learning of the likelihood of litigation. *Major Tours, Inc. v. Colorel*, No. 05-3091, 2009 U.S. Dist. LEXIS 68128, at *9 (D. N.J. Aug. 4, 2009) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("*Zubulake IV*")).

Although Plaintiffs are not required to make a showing of spoliation, evidence indicates that Bayer failed to preserve and collect relevant discovery.[8] Nonetheless, Plaintiffs do not seek production of Bayer's litigation hold notices, for which a showing of spoliation would be necessary. Instead, Plaintiffs request only the kind of information Courts in this jurisdiction have held to be discoverable *without* a preliminary showing of spoliation:

> Despite the fact that plaintiffs typically do not have the automatic right to obtain copies of a defendant's litigation hold letters, **plaintiffs are entitled to know which categories of electronic storage information employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end.**

*Major Tours*, 2009 U.S. Dist. LEXIS 68128, at *7 (citing *In re eBay Seller Antitrust Litigation*, No. 07-CV-01882, 2007 U.S. Dist. LEXIS 75498, at *2 (N.D. Cal. Oct. 2, 2007)) (emphasis added); *see also In re eBay*, 2007 U.S. Dist. LEXIS 75498, at *7-9 (even without showing of spoliation, plaintiffs were "certainly entitled to know what [defendant's] employees are *doing* with respect to collecting and preserving ESI," including "categories of ESI employees were

---

[8] For instance, Jamie Jackson, the former Director of HR for Bayer Healthcare Animal Health, testified that he never searched for documents relevant to this litigation. Jackson Dep. (Ex. I) 20:23-25, 153:2-154:5. Also, Bayer informed Plaintiffs that it failed to preserve a file containing approximately six weeks of email data from the liability period belonging to Defendant Stephan Oelrich. Aug. 29, 2013 B. Sullivan email to M. Schmid (Ex. J).

Judge Clark
February 7, 2014
Page 6

instructed to preserve and collect, and what specific actions they were instructed to undertake," as well as the identities and job titles of employees who received litigation hold notice).

Plaintiffs also seek the identities of Bayer employees and third parties responsible for designing and/or implementing any legal hold in this case and those responsible for creating, maintaining and/or modifying Bayer's ESI retention policies and practices. Plaintiffs need to know who participated in Bayer's preservation and collection efforts to assess further whether Bayer's efforts to preserve and collect evidence were, in fact, meaningful, comprehensive and otherwise sufficient. Information from any third parties implicated by this request, such as IT vendors and agents, nonetheless constitutes material within Bayer's possession, custody or control for purposes of discovery and should therefore be produced along with information about Bayer's internal efforts to preserve and collect evidence. *See Haskins v. First American Title Ins. Co.*, No. 10-5044, 2012 U.S. Dist. LEXIS 149947, at *13 (D.N.J. Oct. 18, 2012) (party must issue litigation hold to third parties who are in physical possession of litigant's material if litigant maintains custody or control the material, for example, by maintaining a right to access it).

Accordingly, the Court should compel Defendants to produce the information Plaintiffs seek regarding Defendants' litigation hold and ESI preservation and retention practices.

## IV.   Internal EEO Analyses

Plaintiffs seek production of the 49 internal Equal Employment Opportunity ("EEO") analyses pertaining to compensation and promotions, recorded on lines 51-1 through 64-3 of Defendants' January 22, 2014 privilege log (Ex. K). These analyses are responsive to Request No. 15 of Plaintiffs' First Set of Requests for Production to the Corporate Defendants (Ex. C), which seeks in relevant part any and all analysis or reports regarding "equal employment opportunities; equitable compensation between male and female employees; utilization or under-utilization of female employees; and the effect or impact of promotion, [or] job assignment" on female employees.

### A.  Legal Standard

A party asserting attorney-client privilege over a communication bears the burden of "demonstrat[ing] that the communication would not have been made but for the client's need for legal advice or services." *Leonen v. John-Manville*, 135 F.R.D. 94, 99 (D.N.J. 1990). The attorney-client privilege applies only to the communication of legal advice; it does not apply to non-legal, business advice. *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007). "[W]here a communication contains both legal and business advice, the attorney-client privilege will apply *only if* the primary purpose of the communication was to aid in the provision of legal advice." *Bamberger Int'l v. Rohm*, No. 96-1041, 1997 U.S. Dist. LEXIS 22770, at *5 (D.N.J. Aug. 12, 1997) (emphasis added).

### B.  It Is Defendants' Burden to Show Privilege Applies

Defendants first asserted privilege over emails relating to "pay equity" studies on their August 13, 2013 privilege log (Ex. L). After extensive discussions about whether all pay equity studies had been produced or included on a privilege log, Bayer's Counsel confirmed on January 16, 2014, that "the pay equity studies withheld on privilege grounds are logged on the October 9,

Judge Clark
February 7, 2014
Page 7

2013 privilege log, and these studies are the ones prepared by the EEO group under the direction of counsel, as described on the logs." Jan. 16, 2014 J. Lee Email to A. Smith (Ex. M). In reality, it was not until Bayer produced a supplemental privilege log on January 22, 2014, that Plaintiffs saw the scale and kind of information being withheld.[9] Even in that supplemental log, which lists each document separately and by date, Bayer fails to identify any document as a pay equity study prepared by the EEO group.

The January 22 log asserts that the "compensation" and "promotion" analyses in question were "performed under direction of counsel for the purpose of providing legal advice" and are protected by the attorney-client privilege. But Defendants' mere assertion of the privilege is insufficient: "[t]he party asserting the attorney-client privilege bears the burden to show that it applies." *United States v. Hassan-Gouda*, No. 07-258, 2013 U.S. Dist. LEXIS 39297, at *19 (D.N.J. Mar. 21, 2013) (citing *In re Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979)). Here, evidence collected in discovery confirms that these analyses were performed for business purposes and not at the direction of counsel. As such, these analyses—the relevance which Defendants do not contest—must be produced.

### C. Defendants Have Not Made the Requisite Showing to Invoke Privilege

When a company conducts an internal employment analysis for business reasons, such as to determine whether pay is being distributed equitably, the analysis is not privileged—even where an attorney is involved in the process. *See, e.g.*, *Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2012 U.S. Dist. LEXIS 16418, at *12, 49 (M.D. Pa. Feb. 9, 2012) (wage-sensitivity analysis was not privileged, despite evidence that the analysis was suggested by counsel, because the analysis was part of a larger restructuring analysis); *Smith v. Texaco, Inc.*, 186 F.R.D. 354, 356-57 (E.D. Tex. 1999) (company's internal report reflecting employment data, including race, was not privileged because the study was generated from employee records maintained in the ordinary course of business even though the report was requested by counsel).

The evidentiary record indicates that the analyses recorded on the January 22 log were conducted for routine business purposes by Bayer's Compensation team prior to 2011 or, later, by Bayer's Human Resources EEO Group. Corporate designee Sean Kolb-Hunt, who was designated to provide testimony regarding Bayer's internal practice of "making pay equity adjustments on a non-privileged basis," testified that pay equity studies are conducted primarily for business purposes on a 12 to 15 month basis. Sean Kolb-Hunt Dep. (Ex. O) at 13:5-25; 560:4-11. She testified that pay equity studies are conducted as a component of Bayer's government-mandated affirmative action plans and because "it's the right thing to do." *Id.* at 931:13-24. When asked about the purpose of these studies, Ms. Kolb-Hunt did not mention counsel or the need for legal advice. *Id.* To the contrary, Ms. Kolb-Hunt emphasized that the EEO Group, not counsel, remains "the owner of that process from the start." *Id.* at 940:23-24. Counsel is only involved in

---

[9] Bayer's October 9, 2013 privilege log did not specifically reference any pay equity studies, let alone pay equity studies prepared by Bayer's EEO group. Further, Defendants' October 9, 2013 log (Ex. N) failed to provide specific dates associated with each document being withheld or to indicate how many documents were being withheld.

Judge Clark
February 7, 2014
Page 8

the process after reports are generated and provided to local HR for review.[10]  *Id.* at 569:1-570:1. Then, counsel may be consulted on whether to make a pay adjustment.[11]  *Id.* at 570:2-10.

Accordingly, the Court should order production of the analyses recorded on lines 51-1 through 64-3 on Defendants' January 22, 2014 privilege log.

**V.     Conclusion**

For the reasons stated above, this Court should compel Defendants to:

(1)  produce the personnel files and performance evaluations of individuals supervised by Plaintiffs' direct managers;

(2)  produce any communications reflecting requests for and results of evaluations of (a) jobs held and sought by the Plaintiffs and (b) jobs supervised by Plaintiffs' direct managers;

(3)  identify individuals to whom any litigation hold instructions were sent in this case;

(4)  identify what steps were taken to preserve ESI in this case;

(5)  identify what steps were taken to monitor compliance with preservation instructions in this case;

(6)  identify what steps were taken to collect preserved ESI for potential production in this case;

(7)  provide the identities of Bayer employees and third parties involved in designing and/or implementing any legal hold in this case;

(8)  provide the identities of Bayer employees and third parties responsible for creating, maintaining and/or modifying Bayer's ESI retention policies and practices; *and*

(9)  produce the internal analyses pertaining to compensation and promotions recorded on lines 51-1 through 64-3 of Defendants' January 22, 2014 privilege log.

---

[10] To the extent that any of the studies recorded at 51-1 through 64-3 on the January 22, 2014 privilege log are distinct from Bayer's pay equity studies, Defendants have failed to provide sufficient detail for Plaintiffs to evaluate the privilege claim. Rule 26(b)(5) requires a party withholding otherwise discoverable documents to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Defendants' failure to properly articulate a claim of privilege is grounds for waiver of the privilege. *See*, *e.g.*, *Wachtel*, 239 F.R.D. at 110 (striking privilege assertion for failure to timely comply with Rule 26(b)(5)). Further, to the extent that Bayer's "promotion analyses" are distinct from its pay equity studies, Ms. Kolb-Hunt's testimony indicates that these promotion analyses are conducted in an identical manner to the pay equity studies. Dep at 688:22-690:24 (noting that the EEO group creates promotion reports which are afterwards discussed with counsel).

[11] Defendants' insistence on withholding these internal analyses precludes them from later relying on such documents in support of defenses they may raise. *See*, *e.g.*, *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("asserting reliance on the advice of counsel as an affirmative defense" is sufficient to waive privilege); *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 537 (3d Cir. 1996) ("The attorney-client privilege is waived for any relevant communication if the client asserts [that he] . . . acted upon the advice of a lawyer . . . .") (citations omitted). If the Court affirms Defendants' assertion of privilege, Plaintiffs will seek an order barring Defendants' affirmative use of such analyses in the future.